Federal Communications Commission         DA 18-801

**Before the**
**Federal Communications Commission**
Washington, DC 20554

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| Amcrest Industries, LLC d/b/a Baofengradio.us ) | File No.: EB-SED-17-00024360 |
| ) | |

**CITATION AND ORDER**

**ILLEGAL MARKETING OF UNAUTHORIZED RADIO FREQUENCY DEVICES**

**Adopted: August 1, 2018**                              **Released: August 1, 2018**

By the Chief, Spectrum Enforcement Division, Enforcement Bureau:

**I.    NOTICE OF CITATION**

1.    Under the rules of the Federal Communication Commission (Commission or FCC), radio frequency (RF) devices marketed in the United States must operate within certain technical parameters because they can easily cause interference to federal government and licensed communications systems. Consistent with these rules, the Commission has established an equipment authorization program, which requires most RF devices to first pass tests verifying that they comply with FCC-prescribed technical requirements before such devices can be marketed in the United States.[1] As such, a marketer must (a) ensure that any RF device it offers for sale in the United States has been tested under and complies with the Commission's rules and (b) adhere to all FCC identification requirements, including providing notice to consumers that such device has been properly authorized under the Commission's rules.

2.    This **CITATION AND ORDER** (Citation) notifies Amcrest Industries, LLC d/b/a Baofengradio.us (Amcrest or Company)[2] that it is marketing an unauthorized RF device—a handheld two-way radio—in violation of Section 302(b) of the Communications Act, as amended (Act), and Section 2.803 of the Commission's rules.[3] We therefore direct Amcrest to take immediate steps to come into compliance with the Commission's equipment authorization rules and cease marketing unauthorized RF devices in the United States. If Amcrest fails to comply with these laws, it may be liable for significant fines of up to $19,639 per day and other sanctions.[4]

3.    *Notice of Duty to Comply with the Law*: We issue this Citation pursuant to Section 503(b)(5) of the Act, which bars the Commission from imposing monetary forfeitures against non-regulatees who violate the Act or Commission rules unless and until: (a) the Commission issues a citation to the violator; (b) the Commission provides the violator a reasonable opportunity to respond; and (c) the violator subsequently engages in conduct described in the citation.[5] Accordingly, Amcrest is hereby on

---

[1] There are limited exceptions to this testing requirement, e.g., transmitters used in the band 1427-1435 MHz. 47 CFR § 90.203(b)(3). However, none of these exceptions apply to the devices at issue in this case.

[2] Amcrest was formerly Foscam Digital Technologies LLC. Letter of Inquiry Response from Mr. Adam Ravat, Managing Member, Amcrest Technologies LLC, to Aspasia A. Paroutsas, Chief, Spectrum Enforcement Division, FCC Enforcement Bureau at 1 (Dec. 7, 2017) (LOI Response) (on file in EB-SED-17-00024360).

[3] 47 U.S.C. § 302a(b); 47 CFR §§ 2.803(b).

[4] *See* 47 U.S.C. § 503(b)(2)(D); 47 CFR § 1.80(b)(7). This amount reflects inflation adjustments to Section 503(b)(2)(D) of the Act, which specifies a $10,000 base forfeiture for each violation or each day of a continuing violation and a $75,000 base forfeiture for any single act or failure to act. *See* 47 CFR § 1.80(b)(9); *Amendment of Section 1.80(b) of the Commission's Rules, Adjustment of Civil Monetary Penalties to Reflect Inflation*, Order, 33 FCC Rcd 46, Appendix A (EB 2018).

[5] 47 U.S.C. § 503(b)(5).

Complaint Exhibit 1

notice that it must comply with Section 302(b) of the Act and Section 2.803(b) of the Commission's rules.[6] If Amcrest subsequently engages in any conduct of the type this Citation describes, Amcrest may be subject to civil penalties including, but not limited to, substantial monetary forfeitures. In assessing such forfeitures, the Commission may consider both the conduct that led to this Citation and the conduct following it.[7]

## II.    BACKGROUND

4.      On March 14, 2013, the Enforcement Bureau's Spectrum Enforcement Division (SED) received a complaint alleging that Baofeng radio model UV-5R was capable of (1) transmitting on land mobile frequencies using the equipment's external controls and (2) operating at power levels above those specified in its Equipment Authorization.[8] On October 30, 2017, SED issued a Letter of Inquiry (LOI) to Amcrest, an authorized distributor of Baofeng radios,[9] directing it to submit a sworn written response to a series of questions relating to these allegations; follow-up LOIs were issued on January 12, 2018, and February 2, 2018.[10] Amcrest timely responded to the inquiries on December 7, 2017, January 23, 2018, and February 4, 2018, respectively.[11]

5.      According to Amcrest, the Company began marketing four models of the Baofeng radio UV-5R series in June 2013; it ceased doing so with respect to three of them (UV-5R, UV-5RA, UV-5RE) "a few years ago."[12] The Company nonetheless failed to remove these three models from its website until

---

[6] 47 U.S.C. § 302a(b); 47 CFR § 2.803(b).

[7] *See* S. Rep. No. 95-580, 95th Cong., 1st Sess. at 9 (1977) (if the target of a Commission-issued citation subsequently engages in the conduct that occasioned the citation of violation, the resulting notice of apparent liability "would attach not only for the conduct occurring subsequently *but also for the conduct for which the citation was originally sent*.") (emphasis added).

[8] Radio models UV-5R and UV-5R V2+ (the subject of this Citation) were authorized under Commission certification procedures in 2012. Grant of Equipment Authorization, Fujian Nan'an Baofeng Electronics Co., Ltd., FCC Identifier ZP5BF-5R (granted May 21, 2012) (Equipment Authorization), https://apps.fcc.gov/oetcf/tcb/reports/Tcb731GrantForm.cfm?mode=COPY&RequestTimeout=500&tcb_code=&application_id=n%2BgY1ooaqEevhls5IkVd1g%3D%3D&fcc_id=ZP5BF-5R. *Cf.* 47 CFR § 15.201.

[9] Amcrest, a limited liability company based in Houston, Texas, sells two-way handheld Baofeng radios through "Amcrest Direct" and on its website, www.baofengradio.us. Amcrest is one of many authorized distributors of Baofeng radios and has no relationship with their manufacturer, Fujian Nan'an Baofeng Electronics Co., Ltd., which Amcrest refers to as "Fujian Baofeng Electronics Co., Ltd" in its LOI Response, along with a reference to the FCC Identifier for the Equipment Authorization. LOI Response at 2.

[10] Letter of Inquiry from Aspasia A. Paroutsas, Chief, Spectrum Enforcement Division, FCC Enforcement Bureau, to Mr. Adam Ravat, Managing Member, Amcrest Technologies LLC (Oct. 30, 2017) (LOI); E-mail from Jennifer Burton, Attorney-Advisor, Spectrum Enforcement Division, Enforcement Bureau, FCC, to Mr. Adam Ravat, Amcrest Industries, LLC (Supplemental LOI) (Jan. 12, 2018, 15:38 EST); E-mail from Jennifer Burton, Attorney-Advisor, Spectrum Enforcement Division, Enforcement Bureau, FCC, to Mr. Adam Ravat, Amcrest Industries, LLC (Second Supplemental LOI) (Feb. 2, 2018, 12:40 EST) (all on file in EB-SED-17-00024360).

[11] LOI Response; Letter of Inquiry Response from Mr. Adam Ravat, Managing Member, Amcrest Technologies LLC, to Aspasia A. Paroutsas, Chief, Spectrum Enforcement Division, FCC Enforcement Bureau (Jan. 23, 2018) (Supplemental LOI Response); E-mail from Mr. Adam Ravat, Managing Member, Amcrest Technologies LLC, to Jennifer Burton et al., Spectrum Enforcement Division, Enforcement Bureau, FCC (Feb. 4, 2018, 13:30 EST) (Second Supplemental LOI Response) (all on file in EB-SED-17-00024360).

[12] LOI Response at 3; Second Supplemental LOI Response at 2.

2

February 1, 2018, following its receipt of the LOI.[13] Currently, Amcrest markets only one model of the Baofeng radio UV-5R series, the UV-5R V2+.[14]

6. After receiving the LOI, the Company confirmed with the manufacturer that model UV-5R V2+ is indeed capable of operating on "restricted frequencies,"[15] though it is incapable of operating at power levels above those specified in its Equipment Authorization.[16] The Company then instructed the manufacturer to rectify the issue[17] and subsequently confirmed with the manufacturer that "all [Amcrest] inventory currently on order and in the future will operate only on 145-155 M[H]z and 400-520 M[H]z."[18]

### III. APPLICABLE LAW AND VIOLATIONS

7. Section 302(b) of the Act states that "[n]o person shall manufacture, import, sell, offer for sale, or ship devices or home electronic equipment and systems, or use devices, which fail to comply with regulations promulgated pursuant to this section."[19] Section 2.803(b) of the Commission's rules states that "[n]o person may market a radio frequency device unless . . . the device has been authorized in accordance with the rules in subpart J of this chapter and is properly identified and labeled as required by § 2.925 and other relevant sections in this chapter . . . ."[20] Under Section 2.803 of the Commission's rules, an entity may not market a device that is capable of operating outside the scope of its equipment authorization.[21] RF devices that have been authorized under Part 90 rules (Private Land Mobile Radio services), such as the model at issue, must operate within the technical parameters established in those rules.[22]

8. After reviewing Amcrest's responses, we find that Amcrest marketed the UV-5R V2+

---

[13] *See* Second Supplemental LOI Response at 2.

[14] LOI Response at 5. The UV-5R V2+ is an updated version of the UV-5R model identified in the complaint; as noted above, both models are covered by the same Equipment Authorization. *See supra* note 8.

[15] Second Supplemental LOI Response at 1. The UV-5R 2+ operates on frequencies not authorized for Part 90. *Cf.* First Supplemental LOI Response at 1-2 (Amcrest added a warning to "all user manuals, marketing materials and sales materials" implying that the UV-5R 2+ can operate on unauthorized and restricted frequencies, including "136 – 137 MHz (Aviation Services, Part 87); 137 MHz – 138 MHz (Satellite Communications, Part 25); 138 MHz – 144 MHz (not available to any FCC licensee – Federal use only); 156.7625 MHz – 157.0375 MHz (Maritime Services, Part 80 and Aviation Services, Part 87)"). *See* 47 CFR §§ 2.106 & nn.US244 ("[t]he band 136-137 MHz is allocated to non-Federal aeronautical mobile (R) service on a primary basis"), G30 ("[i]n the band[] 138-144 MHz . . . the fixed and mobile services are limited primarily to operations by the military services"), 25.202(a)(3), 80.1(b), 87.173(b).

[16] Second Supplemental LOI Response at 2. The UV-5R 2+ user manual states it is capable of operating at either 1 watt or 4 watts, as opposed to the Equipment Authorization's maximum power level of 1.78 watts. Amcrest avers that despite these representations, discussions with the manufacturer confirmed that the UV-5R 2+ is "only capable of operating at 1 [w]att." *Id.*

[17] *See id* at 1-2.

[18] *Id.* at 1.

[19] 47 U.S.C. § 302a(b).

[20] 47 CFR § 2.803(b). "Marketing" includes the sale or lease, or offering for sale or lease (including advertising for sale or lease), or importing, shipping, or distribution for the purpose of selling or leasing or offering for sale or lease. *Id.* § 2.803(a).

[21] *Id.* § 2.803(b).

[22] *See generally* 47 CFR Part 90. For instance, Part 90 radios that permit an operator to use external controls to program and transmit on frequencies, other than those programmed by the manufacturer or service or maintenance personnel, are generally prohibited. 47 CFR § 90.203(e), (g) (delineating exceptions).

outside the scope of its Equipment Authorization.[23]  As noted above, Amcrest admitted that the UV-5R V2+ is "capable of operating on restricted frequencies."[24]  Accordingly, Amcrest violated Section 302(b) of the Act and Section 2.803 of the Commission's rules.[25]  While we recognize Amcrest's efforts to date to achieve compliance with the Commission's rules, the Company must nonetheless ensure the version of the UV-5R V2+ it is marketing operates only on frequencies specified in its Equipment Authorization.[26]

## IV. REQUEST FOR INFORMATION

9. We direct Amcrest to provide the requested documents within 30 days from the release date of this Citation:

> Confirm in writing that Amcrest ceased marketing the UV-5R V2+, including removing all references to the model from marketing materials and Company websites, until it brought the device into full compliance with Section 2.803(b) of the Commission's rules.[27]

> State in writing the date on which the UV-5R V2+ came into compliance with Section 2.803(b) of the Commission's rules.[28]

## V. OPPORTUNITY TO RESPOND TO THIS CITATION

10. Amcrest may respond to this Citation within 30 calendar days from the release date of this Citation by any of the following methods:  (1) a written statement, (2) a teleconference interview, or (3) a personal interview at the Commission Field Office nearest to Amcrest's place of business.  The Commission Field Office nearest Amcrest is located in Dallas, Texas.

11. If Amcrest requests a teleconference or personal interview, contact Jennifer Burton at (202) 418-7581.  We note that such teleconference or interview must take place within 30 calendar days of the release date of this Citation.  If Amcrest prefers to submit a written response with supporting documentation, it must send the response within 30 calendar days of the release date of this Citation to the contact and address provided in paragraph 12, below.

12. All written communications should be sent to the address below.

> Jennifer Burton, Attorney Advisor
> Spectrum Enforcement Division
> Federal Communications Commission
> 445 12th Street, SW, Rm. 3-A445
> Washington, DC 20554
> **Re: EB-SED-17-00024360**

---

[23] The Equipment Authorization contains the designation of "extended frequencies" (EF), which represents the full operating capability of the radio.  *See supra* note 8.  The grantee may use an EF listing on the grant if a portion of the band falls within the operating range of the rule part listed.  The authorization for the UV-5R V2+ lists a frequency range of 136 MHz-174 MHz and 400 MHz-480 MHz, which represents the full operating capability of the radio.  However, only a portion of those frequencies are authorized for Part 90 and certain frequencies listed in the authorization are restricted to use by certain entities such as the federal government.

[24] *See supra* note 15.

[25] 47 U.S.C. § 302a(b); 47 CFR § 2.803(b).

[26] For instance, Amcrest avers that "the inventory currently on order and in the future will operate only on 145-155 M[H]z and 400-520 M[H]z."  Second Supplemental LOI Response at 1.  However, the band 406.0-406.1 MHz falls under the latter frequency range and is limited to certain uses, all of which are outside the scope of the Equipment Authorization.  *See* 47 CFR §§ 80.1061 (emergency position indicating radiobeacon stations), 87.187(m) (distress and safety communications), 95.2963 (emergency and distress frequency band for personal locator beacons).  *Cf.* 47 CFR § 2.106 n.5.267 ("Any emission capable of causing harmful interference to the authorized uses of the band 406-406.1 MHz is prohibited.").

[27] 47 CFR § 2.803(b).

[28] *See id.*

13.     Upon request, the Commission will make reasonable accommodations for persons with disabilities. If applicable, Amcrest should provide a description of the accommodation required, and include as much detail as possible, and also provide a telephone number and other contact information. Amcrest should allow at least five business days advance notice; last minute requests will be accepted, but may be impossible to fill. Amcrest should send an e-mail to fcc504@fcc.gov or call the FCC's Consumer & Governmental Affairs Bureau:

> For sign language interpreters, CART, and other reasonable accommodations: 202-418-0530 (voice), 202-418-0432 (tty);
>
> For accessible format materials (braille, large print, electronic files, and audio format): 202-418-0531 (voice), 202-418-7365 (tty).

14.     We advise Amcrest that it is a violation of Section 1.17 of the Commission's rules[29] for any person to make any false or misleading written or oral statement of fact to the Commission. Specifically, no person shall:

> (1) In any written or oral statement of fact, intentionally provide material factual information that is incorrect or intentionally omit material information that is necessary to prevent any material factual statement that is made from being incorrect or misleading; and
>
> (2) In any written statement of fact, provide material factual information that is incorrect or omit material information that is necessary to prevent any material factual statement that is made from being incorrect or misleading without a reasonable basis for believing that any such material factual statement is correct and not misleading.

15.     Further, the knowing and willful making of any false statement, or the concealment of any material fact, in reply to this Citation is punishable by fine or imprisonment.[30]

16.     Violations of Section 1.17 of the Commission's rules or the criminal statute referenced above may result in further legal action, including monetary forfeitures pursuant to Section 503 of the Act.

17.     Finally, we warn Amcrest that, under the Privacy Act of 1974,[31] Commission staff will use all relevant material information before it, including information disclosed in interviews or written statements, to determine what, if any, enforcement action is required to ensure Amcrest's compliance with the Act and Commission's rules.

## VI.     FUTURE VIOLATIONS

18.     If, after receipt of this Citation, Amcrest again violates the Act and Commission's rules by engaging in conduct of the type described herein, the Commission may impose sanctions for each such violation. For example, the Commission may impose monetary forfeitures. The Commission may impose forfeitures not to exceed $19,639 for each such violation or each day of a continuing violation, and up to $147,290 for any single act or failure to act.[32] The Commission may further adjust the forfeiture reflecting enumerated statutory factors, which include the nature, circumstances, extent, and gravity of the violation, and with respect to the violator, the degree of culpability, any history of prior

---

[29] 47 CFR § 1.17.

[30] 18 U.S.C. § 1001.

[31] 5 U.S.C. § 552a(e)(3).

[32] *See supra* note 4.

offenses, ability to pay, and other such matters as justice may require.[33] Further, as discussed above, the Commission may assess forfeitures on both the conduct that led to this Citation and the conduct following it.[34]

## VII. ORDERING CLAUSES

19. Accordingly, **IT IS ORDERED** that, pursuant to Sections 4(i) and 4(j) of the Act,[35] Amcrest Industries, LLC must cease and desist from marketing any Baofeng Radio model UV-5R V2+ that is capable of transmitting on unauthorized or restricted frequencies in violation of Sections 2.803(b) of the Commission's rules.[36]

20. **IT IS FURTHER ORDERED** that, pursuant to Sections 4(i), 4(j), and 403 of the Act,[37] Amcrest Industries, LLC must provide the written information requested in paragraph 9, above. Amcrest Industries, LLC must support its responses with an affidavit or declaration under penalty of perjury, signed and dated by an authorized officer of Amcrest Industries, LLC with personal knowledge of the representations provided in the response, verifying the truth and accuracy of the information therein and that all of the information requested has been produced. All such declarations provided must comply with Section 1.16 of the Commission's rules and be substantially in the form set forth therein.[38] The FCC must receive the response within 30 calendar days of the release date of this Citation and Order.

21. **IT IS FURTHER ORDERED** that a copy of this Citation and Order shall be sent by first class mail and certified mail, return receipt requested, to Mr. Adam Ravat, Managing Member, Amcrest Industries, LLC, 16727 Park Row Drive, Houston, TX 77084.

FEDERAL COMMUNICATIONS COMMISSION

Matthew L. Conaty
Chief
Spectrum Enforcement Division
Enforcement Bureau

---

[33] 47 U.S.C. § 503(b)(2)(E); 47 CFR § 1.80(b)(8).

[34] *See supra* paras. 2-3.

[35] 47 U.S.C. §§ 154(i), 154(j).

[36] 47 CFR § 2.803(b).

[37] 47 U.S.C. §§ 154(i), 154(j), 403.

[38] 47 CFR § 1.16.